HELEN L. MARTIN *vs.* ELEANOR ATHERTON
MORRIS A. MARTIN *vs.* ELEANOR ATHERTON
WAYNE L. MARTIN, PRO AMI, BY
MORRIS A. MARTIN *vs.* ELEANOR ATHERTON

Penobscot.    Opinion, August 1, 1955.

*Pilot & Pilot,*
*Gerard Collins,* for plaintiffs.

*James W. Gillin,*
*David W. Fuller,*
*Harold A. Towle,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MR. JUSTICE TIRRELL sat at the time of argument and took part in conferences but died before the writing of the opinion.

BELIVEAU, J. These tort cases are each before us first, on a general motion for a new trial on the usual grounds addressed to the Law Court and second, on exceptions to the denial of special motion filed with the presiding justice after verdict and before judgment alleging misconduct of jurors in taking notes, and praying (1) that the jurors might be examined and compelled to show cause why they were not biased and prejudiced and to show that they rendered a true and just verdict, and (2) that a new trial might be granted, presumably because of the alleged misconduct.

The facts show that on September 30, 1952, at about three o'clock in the afternoon, Helen L. Martin and her son proceeded on foot to the intersection of Forest Avenue and Garland Street in the City of Bangor, where Mrs. Martin planned to cross Garland Street at the intersection, with the home of her sister-in-law as her destination. A passenger bus stationed at the intersection was put in motion when Mrs. Martin arrived at that point. She took the child in her arms and started across Forest Avenue to reach the northerly side of that highway. As she neared the opposite side, the collision complained of occurred. She was severely injured as was the child she carried in her arms.

The plaintiffs in their declarations alleged, as was necessary, that they were exercising due care and that the collision was due wholly to the negligence of the defendant. Not only were these allegations necessary but in order to be successful these two elements in the case had to be resolved in favor of the plaintiffs by the jury. This the jury failed to do.

The reading of the record discloses these salient facts.

Mrs. Martin as she reached the intersection, with the child, waited for the bus, then parked, to move along. She then made her way across Garland Street with the child in her arms, as before stated. The defendant was operating her automobile in Mrs. Martin's direction and the two came together on the further or northerly side of Garland Street. There is no evidence that the defendant was violating any municipal ordinance or the laws of this State relating to the operation of a motor vehicle. Neither Mrs. Martin nor her witness, Mrs. Botzko, testified as to the manner in which the defendant was operating the car. The record discloses that the first knowledge either one of them had was the instant the car struck Mrs. Martin.

It is true Mrs. Martin testified that when she crossed the highway she looked in both directions, on her left and on her right, and saw no car coming. In this she was wrong, as it is obvious the defendant's car was on that highway coming in her direction in close proximity to her. It was there for her to see.

"Mere looking is not sufficient. One is bound to see what is obviously to be seen."

*Clancy* v. *Cumberland County Power & Light Co.,* 128 Me. at page 278.

The jury apparently found that the defendant's car was visible to the plaintiff and could have been seen by her if she had exercised that ordinary care which it was her duty to exercise in that situation and under those conditions.

The defendant testified that she first saw Mrs. Martin and her baby directly in front of the car and could not stop in time to avoid a collision. There is other testimony that Mrs. Martin proceeded to cross immediately in back of the bus without paying any attention to the traffic. From this and other evidence the jury concluded Mrs. Martin was guilty of contributory negligence.

While the plaintiffs took no exceptions to the charge by the presiding justice they now complain that the following instructions, part of the charge, were not proper and can be considered on their general motion, to wit:

> "He (meaning the plaintiff) cannot justify such action, that is, walking into a position of danger on his part, by showing that he looked for danger, which was apparent, and did not see it. Mere looking will not suffice. A pedestrian in such a situation is bound to see what is obviously to be seen."

As authority for the propriety of raising this objection in their brief, for the first time, they rely on *Cox* v. *Metropolitan Life Insurance Company,* 139 Me. 167.

It is true that in some instances the court has considered matters on general motion which should have been excepted to during the trial.

> "A general motion ordinarily does not reach a defect in the judge's charge. Where, however, manifest error in law has occurred in the trial of a case and injustice inevitably results, the law of the case may be examined on a motion for a new trial on the ground that the verdict is against the law."

*Springer* v. *Barnes,* 137 Me., page 20.

The situation here is not comparable to the one which the court discusses in the above-cited case, and in other cases in Maine. While in some instances where grave injustice might result the court has considered on a general motion that which ordinarily should have been taken care of by exceptions, the cases here do not come within that category. It is still the rule that exceptions must be taken to that part of the charge which is not satisfactory. Exceptions or requested instructions, where the law has been unintentionally misstated in the charge, gives the presiding justice an opportunity to correct such errors before the jury retires. While it is not necessary to so rule, that part of the

charge was not exceptionable. It merely gave the correct rule of law as it applies to a pedestrian about to cross a highway. This was one of the important issues of these cases.

Wayne L. Martin, one of the plaintiffs, was two years old at the time of the accident, and because of his age, was *non sui juris*. He can only recover by showing due care of the custodian.

*Gravel* v. *Leblanc*, 131 Me., Page 330.

It was wholly a question of fact for the jury to determine and there is ample evidence in the case to justify the verdicts.

Sometime during the charge the presiding justice noticed that two of the jurors were taking notes. He immediately asked them to desist and gave the reasons why. This apparently took care of the situation as far as the parties were concerned and nothing more was said or done about this before the jury retired. Some few days after the verdicts, and during the term, the plaintiffs filed motions in each case, all identical, which consisted of two parts—one asking for examination of the jurors and the other for a new trial.

The purpose of this motion was to allow the plaintiffs' attorney to examine the jurors who took the notes and, as argued by the plaintiffs in their brief, to show:

> "Why they were not prejudiced, biased and partial so far as such evidence related to the plaintiffs ......"

Hearing was had on this motion and the motion denied. Exception was taken to this ruling.

By the great weight of authority, the taking of notes by jurors is not illegal. We agree with that rule.

*Commonwealth* v. *Tucker*, 189 Mass. 457 at Page 497; 53 Am. Jur., Sec. 851, Page 623.

There were two methods of procedure opened to the plaintiffs. One was to immediately address a motion to the presiding justice for a mistrial and the other a motion to this court, as provided by Section 59 of Chapter 113 of the Revised Statutes.

*Rioux* v. *Portland Water District,* 132 Me. 307, recognizes that both methods can be employed simultaneously. Regardless of the fact that the alleged injured party followed one or both of the recognized methods, his objections should have been noted, immediately, at the time the act complained of occurred. The plaintiffs should have protected their rights in that manner when the presiding justice cautioned the jurors against taking notes.

Our court in *State of Maine* v. *Rheaume,* on a motion for a mistrial on the grounds that a juror had been unable to comprehend all of the testimony, because of alleged physical disability, filed after verdict, the court there held "that the motion should have been made immediately on discovery of the juror's alleged incapacity."

The court further said:

"Under such circumstances as these, a party is not permitted to take his chance of a favorable verdict, and then, if it is adverse, interpose an objection to it based on facts which were known to him before it was rendered."

*State of Maine* v. *Rheaume,* 131 Me. Page 261; *McGuffie* v. *Hooper,* 122 Me. 118.

*Motion and exceptions overruled.*