2006 OK CIV APP 60

Lisa THOMPSON and Rick Thompson, Plaintiffs/Appellees,

v.

Jeff KRANTZ and Powers Radiology, Inc., an Oklahoma corporation, Defendants/Appellants.

No. 101,193.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 9, 2006.

Jesse J. Worten, III, David B. King, John M. Keefer, Brewer, Worten, Robinett, Bartlesville, OK, for Appellees.

Marthanda J. Beckworth, Galen L. Brittingham, Atkinson, Haskins, Nellis, Holeman, Brittingham, Gladd & Carwile, Tulsa, OK, for Appellants.

Opinion by JOHN F. REIF, Judge.

¶1 This appeal arises from proceedings that followed the trial court's entry of judgment on a jury verdict in favor of defendants. The judgment was filed May 27, 2003. Plaintiffs first filed a motion for new trial on May 28, 2003, alleging, among other things, misconduct by a juror in doing internet research about matters related to the case. After questioning the juror about her internet research, the trial court denied this motion on August 22, 2003. Plaintiffs then sought relief from the denial of the motion for new trial by filing *both* an appeal on September 9, 2003, *and* a motion to vacate on September 19, 2003. Plaintiffs also filed a motion to disqualify the trial judge on September 19, 2003. Three days later, before ruling on the motion to disqualify, the trial court granted the motion to vacate the denial of the motion for new trial. Thereafter, the trial court questioned other jurors to determine whether any other jurors were aware of the juror's internet research about matters related to the case. After questioning the jurors, the trial court granted the motion for new trial, and defendants brought this appeal.

¶2 On appeal, defendants argue that the trial court erred in granting the new trial, because (1) the appeal that plaintiffs filed prior to the motion to vacate ousted the trial court of jurisdiction as provided in *Goldman v. Goldman*, 1994 OK 111, 883 P.2d 164; (2) the motion to disqualify the trial judge that plaintiffs filed concurrently with the motion to vacate ousted the trial court of jurisdiction until the motion to disqualify was resolved as provided in *Clark v. Board of Education of*

*Independent School District No. 89*, 2001 OK 56, 32 P.3d 851, and (3) the record fails to support the conclusion that the juror committed misconduct in doing internet research about matters related to the case. Upon review of the record and applicable law, we find no error in these regards and affirm.

**I.**

¶3 In the *Goldman* case, the Oklahoma Supreme Court reaffirmed "the general rule" that "*a district court's exercise of judicial power with respect to issues that are tendered for review [by a pending appeal] is void[,] if it occurs before mandate has been transmitted to revest the trial court with subject matter jurisdiction.*" *Goldman*, ¶2, 883 P.2d at 166. "[E]xceptions to this rule are enumerated in Rule 1.31, Rules on Perfecting a Civil Appeal, Ch. 15, App. 2 (1994)." *Id.* at n. 2, 888 P.2d at 166.

¶4 Rule 1.31(a) provided, in pertinent part, that "the trial court does retain jurisdiction in the case after a petition in error has been filed ... (3) To decide motions for new trial ... or a motion or petition for relief on grounds provided by 12 O.S.1981 § 1031 and 12 O.S. Supp.1990 § 1031.1." Rule 1.31 was revised and renumbered as Supreme Court Rule 1.37 on January 1, 1997.[1] The text of Rule 1.37(a), applicable to the case at hand, similarly provides that "[a]fter a petition in error has been filed, the trial court retains jurisdiction in the case for the following purposes: ... (3) to decide motions for a new trial ... or a motion or petition for relief on grounds provided for by 12 O.S.1991 § 1031 and 12 O.S. Supp.1993 § 1031.1."

¶5 Prior to the *Goldman* case, the Oklahoma Supreme Court had expressly recognized that § 1031.1 allowed a trial court to reconsider a judgment despite a pending appeal of the same judgment. In the case of *James Energy Co. v. HCG Energy Corp.*, 1992 OK 117, ¶32, 847 P.2d 333, 341 (emphasis added), the Supreme Court stated: "*The filing of an appeal divests the trial court of jurisdiction* to make any order materially affecting the rights of the parties *subject to*

---

1. Now found at 12 O.S.2001, ch. 15, app. 1.

*the 30–day exception provided in Okla. Stat. tit. 12, § 1031.1 (1981)."*

¶ 6 Defendants have acknowledged § 1031.1, but suggest that it is limited to a judgment on the merits and "does not contemplate multiple thirty day periods after each and every order entered by the trial court." While motions for new trial appear to be limited to judgments on the merits (*i.e.* "reexamination ... after a verdict by a jury, the approval of the report of a referee, or a decision by the court," 12 O.S.2001 § 651), motions to vacate under § 1031.1 are allowed for "a judgment, decree, or appealable order." Under the Supreme Court Rules, "[t]he term 'judgment' is synonymous with a final order," Rule 1.20(a), and "[a] final order [includes] an order denying a timely and proper motion for new trial," Rule 1.20(b)(1), 12 O.S.2001, ch. 15, app. 1.

¶ 7 In addition, prior to the enactment of § 1031.1, Oklahoma law recognized that a trial court's decision concerning a motion for new trial could be reconsidered by a motion to vacate filed within the same term of court as the decision on the motion for new trial was entered. *Phillips Petroleum Co. v. Davis,* 1942 OK 243, ¶¶ 37–38, 147 P.2d 135, 141. "Although terms of court have been abolished in Oklahoma, the common-law term-time power [to reconsider and vacate a judgment] survived and came to be *codified* in ... § 1031.1 [with] the time limit for invoking this [power] now fixed at thirty days from the decision." *Schepp v. Hess,* 1989 OK 28, ¶ 7, 770 P.2d 34, 38 (footnotes omitted).

¶ 8 In the case at hand, we hold the trial court's order of August 22, 2003, denying plaintiffs' motion for new trial is the type of judgment that the trial court could properly reconsider and vacate under § 1031.1. We also hold the trial court could properly decide the motion to vacate even though plaintiffs had also appealed the denial of their motion for new trial.

## II.

■ ¶ 9 Defendants point out that the trial judge ruled on plaintiffs' motion to vacate before ruling on plaintiffs' motion to disqualify the trial judge. Defendants contended the trial court "exceeded its jurisdiction" in doing so. Defendants note that the Oklahoma Supreme Court has said "[a] challenge to an assigned judge for want of impartiality presents an issue of constitutional dimension which must be resolved and the ruling memorialized of record after a meaningful evidentiary hearing." *Clark,* 2001 OK 56, ¶ 7, 32 P.3d at 854 (footnote omitted). Defendants also stress "[t]he quest for recusal may not be ignored, nor is a judge free to proceed with the case until the challenge stands overruled of record following a judicial inquiry into the issue." *Id.*

¶ 10 If that pronouncement were all that the Oklahoma Supreme Court had said on this subject, this directive might be entitled to the literal force that defendants contend it should be given. However, the Supreme Court also observed that "[w]ant of a record ruling upon this critical issue subjects **the moving party** to a trial before a judge whose challenged impartiality goes untested." *Id.* (emphasis in bold added). The Supreme Court further stated that **"[t]he challenger** is hence entitled to a new trial [in such cases]." *Id.* (emphasis in bold added).

■ ¶ 11 If a trial judge enters a ruling without disposing of a motion to disqualify, the party aggrieved by such a ruling is the party seeking the disqualification. It is *that party's* constitutional right that is affected and *that party* who is entitled to seek a remedy. The limitation upon the trial court proceeding in the face of an unresolved motion to disqualify is a procedural safeguard, not a jurisdictional bar.

■ ¶ 12 As plaintiffs point out in their brief on appeal, "the judgment of a court rendered by a disqualified judge is not void [for want of jurisdiction] but voidable error, and the right [of a party] to disqualify the judge is a personal privilege [*i.e.* procedural safeguard] that may be waived." *Pierce v. Pierce,* 2001 OK 97, ¶ 23, 39 P.3d 791, 800 (citations omitted). In the case at hand, plaintiffs were the parties seeking the trial judge's disqualification and they have waived any challenge they may have to the trial judge's ruling on the motion to vacate without disposing of the recusal motion.

### III.

¶ 13 Defendants also contend the trial court erred in granting plaintiffs' motion for new trial by allowing individual jurors to impeach the jury verdict. Defendants alternatively contend that even if the trial court properly allowed testimony from certain jurors about one juror's internet research, the evidence concerning this research did not show misconduct that would justify granting a new trial.

¶ 14 While Oklahoma law does not allow for evidentiary hearings to generally inquire about juror conduct and deliberations, it does allow inquiry into "whether extraneous prejudicial information was improperly brought to the jury's attention." By statute, "a juror may testify on [this] question." 12 O.S.2001 § 2606(B). Plaintiffs' motion for new trial raised this question in regard to one juror's internet research and, therefore, the trial court and counsel could properly inquire of the jurors in the present case whether the internet research was extraneous prejudicial information improperly brought to the jury's attention. Such evidentiary hearings are not only proper, but a necessary predicate to preserve the error for review. *See Robinson v. Borg–Warner Protective Services Corp.,* 2001 OK 59, 31 P.3d 1041.

¶ 15 Defendants cite case law from both Oklahoma and other jurisdictions to support their contention that internet research by a juror does not constitute misconduct. We decline to consider the case law from other jurisdictions on this issue, because Oklahoma law provides clear principles and adequate guidance for deciding this issue.

¶ 16 The Oklahoma Supreme Court has consistently upheld the grant of a new trial where jurors have considered information from sources other than the testimony and exhibits admitted at trial. *Negrate v. Gunter,* 1955 OK 118, 285 P.2d 194 (jurors receiving exhibits that were not introduced into evidence); *Swift & Co. v. Kirkley,* 1942 OK 395, ¶ 2, 131 P.2d 998, 999 (jurors having possession of an exhibit excluded by the trial court and two jurors independently viewing the premises where the accident occurred);

and *Peoples Finance & Thrift Co. v. Ferrier,* 1942 OK 343, 129 P.2d 1015 (per curiam) (jurors taking memorandum used by counsel in support of argument but not admitted into evidence). The Supreme Court generally condemns "the introduction into a jury room during deliberations of an outside memo or matter that has not come through the critical eye of the trial judge, such as a memo or a matter that was excluded from or not introduced into evidence." *State ex rel. Dep't of Highways v. Lehman,* 1969 OK 194, ¶ 8, 462 P.2d 649, 651; *see also Sligar v. Bartlett,* 1996 OK 144, 916 P.2d 1383 (Wilson, C.J., specially concurring). Juror consideration of any matter "which bears upon the issues to be determined and which has not been introduced in evidence is error such as justifies the court in granting a new trial." *Peoples Finance,* 1942 OK 343, ¶ 0, 129 P.2d at 1016 (syllabus 5).

¶ 17 In the case at hand, Juror Fisher admitted that she did internet research concerning the procedure for a myelogram, medications taken by plaintiff Lisa Thompson, and to help her understand what all the medical experts were saying. As a nurse, Juror Fisher indicated she had nursing care plans concerning the care of a patient with spinal cord injury and that she referred to those plans. Juror Fisher indicated she did not think she communicated any information to other jurors about Ms. Thompson's medications, or information from her nursing care plans. She did discuss some information about the risks of a myelogram as it related to the consent form signed by Ms. Thompson. Juror Fisher acknowledged that she found a case on the internet that was similar to plaintiffs' case, but stated she did not communicate that finding to other jurors. Juror Fisher admitted she used the information she had researched in her own deliberation process.

¶ 18 Three jurors testified that Juror Fisher made a statement that she had found a case on the internet similar to plaintiffs' case. Two jurors related the statement was made in response to another juror's observation that plaintiffs' case was the only case where myelogram dye had been mistakenly injected into the conus of the spinal cord. These

jurors were not sure how many other jurors heard Juror Fisher's statement. The juror whose observation allegedly evoked Juror Fisher's statement testified that Juror Fisher mentioned finding a similar case from internet research at the start of deliberations and that it was made to the jurors as a whole.

¶ 19 While there is a conflict in the evidence about the dissemination of Juror Fisher's internet research, it is undisputed that she did such research and she considered it in her deliberations. In addition, there is no doubt that one of the findings of Juror Fisher's out-of-court research had a direct bearing upon a key issue in plaintiffs' theory and proof of negligence.

■ ¶ 20 It has long been recognized that "[w]here a motion for new trial is filed assigning as one of the grounds therefor misconduct of a juror and at a hearing on said motion, at which evidence is introduced, questions of fact are raised as to whether the juror was guilty of such misconduct, the finding of the trial court on such question of fact will not be disturbed [on appeal] where there is evidence reasonably supporting such finding." *Harris v. Boggess,* 1927 OK 80, ¶ 0, 255 P. 685, 685–86 (syllabus 2). In the case at hand, we hold the evidence reasonably supports the conclusion that Juror Fisher was guilty of misconduct (albeit unintentional) by considering and sharing a matter that had not come through the critical eye of the trial judge or the evidentiary filter of trial.

■ ¶ 21 "It is the duty of the trial court to safeguard the rights of litigants to a fair trial and where, in the opinion of the court, a party has not been so protected, may grant a new trial to obviate the error which has occurred." *Negrate,* 1955 OK 118, ¶ 0, 285 P.2d at 194 (syllabus 2); *Peoples Fi-*

*nance,* 1942 OK 343, ¶ 0, 129 P.2d at 1016 (syllabus 6). "A motion for new trial is addressed to the sound legal discretion of the trial court, and, where the trial judge sustains such motion, every presumption will be indulged that such ruling is correct." *Peoples Finance,* 1942 OK 343, ¶ 0, 129 P.2d at 1016 (syllabus 3); *Propst v. Alexander,* 1995 OK 57, ¶ 8, 898 P.2d 141, 144 (footnote omitted). "A decision to grant a new trial should not be reversed unless it is shown beyond all reasonable doubt that the trial court materially and manifestly erred [on a pure and unmixed question of law] or acted arbitrarily or capriciously." *Propst,* 1995 OK 57, ¶ 8, 898 P.2d at 145 (footnotes omitted).

¶ 22 In the case under review, defendants have not shown beyond all reasonable doubt that the trial court materially and manifestly erred on a pure and unmixed question of law, or acted arbitrarily or capriciously. Indeed, the trial court showed appropriate concern for and properly inquired into a juror's consideration of matters bearing on an issue to be determined that did not come through the critical eye of the trial judge and the evidentiary filter of trial.

¶ 23 We hold the trial judge did not err or abuse his discretion in granting plaintiffs' motion for new trial. Accordingly, the order granting the new trial is AFFIRMED.

RAPP, V.C.J., and GABBARD, P.J., concur.